UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GLORIA PENA VELIZ,                ) Case No. EDCV 14-0180-JPR
                                  )
              Plaintiff,          )
                                  )
         vs.                      ) **MEMORANDUM OPINION AND ORDER**
                                  ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security,                         )
                                  )
              Defendant.          )
_____   )

**I.   PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision

denying her applications for Social Security disability insurance

benefits ("DIB") and supplemental security income benefits

("SSI").  The parties consented to the jurisdiction of the

undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This

matter is before the Court on the parties' Joint Stipulation,

filed October 27, 2014, which the Court has taken under

submission without oral argument.  For the reasons stated below,

the Commissioner's decision is affirmed.

1

## II.   BACKGROUND

Plaintiff was born on May 15, 1956.  (Administrative Record ("AR") 43, 191.)  She completed 10th grade and worked as a kitchen assistant/dining room attendant, cook/helper, mobile-home assembler, and housekeeper.  (AR 22, 44-48, 60, 242-45, 262-67.)

On September 7, 2010, Plaintiff submitted applications for DIB and SSI, alleging that she had been unable to work since October 30, 2008, because of "Osteoarthritis," "Back Problems (spasms)," "Thyroid disorder," and "Claustrophobia."  (AR 191-99, 235.)  After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.  (AR 109.)  A hearing was held on June 22, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE").  (AR 39-64.)  In a written decision issued July 24, 2012, the ALJ found Plaintiff not disabled.  (AR 13-22.)  On December 9, 2013, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

2

1   It is more than a scintilla but less than a preponderance.

2   Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

3   Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

4   substantial evidence supports a finding, the reviewing court

5   "must review the administrative record as a whole, weighing both

6   the evidence that supports and the evidence that detracts from

7   the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

8   720 (9th Cir. 1996).   "If the evidence can reasonably support

9   either affirming or reversing," the reviewing court "may not

10  substitute its judgment" for that of the Commissioner.   Id. at

11  720-21.

12  **IV.   THE EVALUATION OF DISABILITY**

13      People are "disabled" for purposes of receiving Social

14  Security benefits if they are unable to engage in any substantial

15  gainful activity owing to a physical or mental impairment that is

16  expected to result in death or which has lasted, or is expected

17  to last, for a continuous period of at least 12 months.   42

18  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

19  (9th Cir. 1992).

20      A.   The Five-Step Evaluation Process

21      An ALJ follows a five-step sequential evaluation process to

22  assess whether someone is disabled.   20 C.F.R. §§ 404.1520(a)(4),

23  416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir.

24  1995) (as amended Apr. 9, 1996).   In the first step, the

25  Commissioner must determine whether the claimant is currently

26  engaged in substantial gainful activity; if so, the claimant is

27  not disabled and the claim must be denied.   §§ 404.1520(a)(4)(i),

28  416.920(a)(4)(i).   If the claimant is not engaged in substantial

3

gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iv).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination
2  comprises the fifth and final step in the sequential analysis.
3  §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester</u>, 81 F.3d at 828 n.5;
4  <u>Drouin</u>, 966 F.2d at 1257.

5       B.   <u>The ALJ's Application of the Five-Step Process</u>

6       At step one, the ALJ found that Plaintiff had not engaged in
7  substantial gainful activity since October 30, 2008, the alleged
8  onset date.  (AR 15.)  At step two, she concluded that Plaintiff
9  had the severe impairments of "osteoarthritis of the hands, feet,
10 back, and left hip; hypothyroidism; vertigo; and obesity."  (<u>Id.</u>)
11 At step three, the ALJ determined that Plaintiff's impairments
12 did not meet or equal any of the impairments in the Listing.  (AR
13 17.)  At step four, she found that Plaintiff had the RFC to
14 perform light work:

15      the claimant can lift and/or carry 20 pounds occasionally
16      and ten pounds frequently; she can stand and/or walk for
17      six hours out of an eight-hour workday with regular
18      breaks; she can sit for six hours out of an eight-hour
19      workday with regular breaks; she is unlimited with
20      respect to pushing and/or pulling, other than as
21      indicated for lifting and/or carrying; she can
22      occasionally bend, stoop, climb stairs, and balance; she
23      can rarely kneel, squat, crouch, or crawl; she is
24      precluded from climbing ladders, ropes, or scaffolds; she
25      is limited to frequent bilateral fine and gross
26      manipulation; she is precluded from work at unprotected
27      heights, around moving machinery, or around other
28      hazards; and she cannot work at extreme temperatures.

1   (Id.)   Based on the VE's testimony, the ALJ concluded that
2   Plaintiff could perform her past relevant work as a housekeeper.
3   (AR 21.)   Accordingly, she found Plaintiff not disabled.   (AR
4   22.)

5   **V.   DISCUSSION**

6       Plaintiff contends that the ALJ erred in finding that she
7   could perform her past relevant work and in failing to fully
8   develop the record.   (J. Stip. at 4.)   Remand is not warranted on
9   either basis.

10      A.   Any Error in Finding That Plaintiff Could Perform Her
11           Past Relevant Work Was Harmless

12      Plaintiff contends that the ALJ erred in finding that
13   Plaintiff's RFC would permit her to perform her past relevant
14   work as a housekeeper.   (J. Stip. at 4-8, 10-12); see DOT
15   323.687-014, available at 1991 WL 672783.

16          1.   Applicable law

17      At step four, the claimant has the burden of showing that
18   she can no longer perform her past relevant work.   Pinto v.
19   Massanari, 249 F.3d 840, 844 (9th Cir. 2001); §§ 404.1520(e),
20   416.920(e).   She "has the burden of proving an inability to
21   return to [her] former type of work and not just to [her] former
22   job."   Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986)
23   (emphasis in original).   Although the burden lies with the
24   claimant at step four, the ALJ still has a duty to make the
25   requisite factual findings to support her conclusion.   Pinto, 249
26   F.3d at 844 (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)).
27   "This is done by looking at the residual functional capacity and
28   the physical and mental demands of the claimant's past relevant

1  work." Id. at 844-45 (internal quotation marks omitted); see
2  also §§ 404.1520(f), 416.920(f).  If the ALJ properly determines
3  that the claimant can perform either the actual functional
4  demands and job duties of a particular past relevant job or the
5  job as generally performed in the national economy, the claimant
6  is not disabled.  Pinto, 249 F.3d at 845; §§ 404.1520(f),
7  416.920(f).

8              2.   Relevant background

9      The ALJ presented to the VE a hypothetical individual with
10  Plaintiff's light-work RFC, including a restriction to only
11  "rarely kneeling, squatting, crouching, [and] crawling," and the
12  VE testified that such an individual could perform only one of
13  Plaintiff's past relevant jobs, housekeeper.  (AR 61; see AR 17.)
14  The ALJ presented a second hypothetical with the same
15  restrictions, except that the individual's capacity for fine and
16  gross manipulation with her hands was reduced from frequent to
17  only occasional.  (AR 61.)  The VE testified that such a person
18  could not work as a housekeeper but could perform other jobs,
19  including usher, DOT 344.677-014, available at 1991 WL 672865;
20  ticket taker, DOT 344.667-010, available at 1991 WL 672863; and
21  counter clerk, DOT 249.366-010, available at 1991 WL 672323.  (AR
22  61.)  The VE testified that each of the positions required only
23  occasional reaching, handling, and fingering.[2]  (Id.)  The ALJ

24

25      [2] According to the DOT, a ticket-taker must be capable of
26  only occasional fingering but frequent reaching and handling.
    1991 WL 672863.  Because both the hypothetical and Plaintiff's
27  RFC included limitations only as to fine and gross manipulation
    (AR 17, 61), the VE's mischaracterization of the reaching and
28  handling demands of the ticket-taker position was irrelevant.

presented a third hypothetical that was the same as the first
except that the individual could lift and carry only 10 pounds
and stand and walk for only 30 minutes at a time.  (AR 62.)  The
VE testified that although such a person could not perform the
jobs of usher, ticket taker, and counter clerk, she could perform
other jobs, such as assembler, DOT 706.684-030, available at 1991
WL 679052, which is a sedentary position.  (AR 62-63.)  The VE
further testified that combining the second and third
hypotheticals – such that an individual could only occasionally
reach, handle, and finger; could lift and carry only 10 pounds;
and could stand and walk for only 30 minutes – would limit the
individual to only sedentary work.  (AR 63.)

The VE stated that her testimony was consistent with the
DOT, and Plaintiff's counsel asked no questions of the VE.  (Id.)

### 3.  Analysis

Plaintiff contends that the ALJ erred in accepting the VE's
testimony that an individual limited to light work and "rarely"
kneeling, squatting, crouching, or crawling would be capable of
Plaintiff's past work as a housekeeper.  (J. Stip. at 6.)
Plaintiff notes that the job of housekeeper requires occasional
kneeling and crouching (see DOT 323.687-014, 1991 WL 672783) and
contends that "rarely is less than occasional[ly]."  (J. Stip. at
7.)  Plaintiff thus contends that the VE's testimony that
Plaintiff could perform her past work as a housekeeper either
conflicted with or deviated from the DOT.  (Id. at 8.)

Whether the VE's testimony conflicted with or deviated from
the DOT is a close question.  The VE testified that a person who
could "rarely" kneel, squat, crouch, or crawl could work as a

8

1 housekeeper and that her testimony was consistent with the DOT.

2 (AR 61, 63.) "Rarely" is not among the terms of art used in the

3 DOT, and it is a word subject to common understanding and one the

4 VE could reasonably be expected to have ably interpreted in

5 assessing the work capacity of a person with Plaintiff's RFC.[3]

6 Indeed, the DOT defines "occasionally" as existing "up to 1/3 of

7 the time," which would necessarily include any lesser amount of

8 time than one third. See DOT 323.687-014, 1991 WL 672783.   The

9 VE's testimony that an individual limited to light work and

10 "rarely" kneeling, squatting, crouching, or crawling could work

11 as a housekeeper is itself substantial evidence.   See Bayliss v.

12 Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that "[a]

13 VE's recognized expertise provides the necessary foundation for

14 his or her testimony" and "no additional foundation is

15 required"); Olquin v. Astrue, No. EDCV 11-1802-OP, 2012 WL

16 4711775, at *5 (C.D. Cal. Oct. 1, 2012) (same).   Morever, courts

17 have found at step four that no conflict with the DOT existed

18 when the DOT job description did not include a provision that was

19 actually incompatible with the RFC the VE relied on but rather

20 was simply silent or unclear as to one of the RFC's limitations.

21 See, e.g., Leon v. Astrue, 830 F. Supp. 2d 844, 849-50 (C.D. Cal.

22 2011); Megliorino v. Astrue, No. CV 11-07895 SS, 2012 WL 2847705,

23 at *10-11 (C.D. Cal. July 10, 2012); Alarcon v. Astrue, No.

24 12-CV-1719-IEG (MDD), 2013 WL 1315968, at *3-5 (S.D. Cal. Mar.

25

26     [3] "Squatting" also does not appear in the DOT.   Plaintiff

27 does not challenge the VE's testimony on the ground that the
ALJ's hypothetical referred to "squatting" rather than

28 "stooping."

28, 2013).[4]

And although Plaintiff now contends that the use of the term "rarely" in the hypotheticals and her RFC was problematic, her counsel did not challenge it or seek clarification at the hearing, when any issue with the ALJ's language could have been addressed. See Solorzano v. Astrue, No. EDCV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) (noting counsel's "obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed"); Carrillo v. Astrue, No. CV 12-00282-JEM, 2012 WL 4107824, at *5-6 (C.D. Cal. Sept. 18, 2012) (rejecting challenge to step-four finding when there was no apparent conflict and counsel raised no conflict with the DOT when given opportunity to question VE).

On the other hand, as Plaintiff points out (J. Stip. at 7), the ALJ appears to have intended "rarely" to mean less than "occasionally," which would render it incompatible with the DOT's description of the housekeeper position. But even if the ALJ erred at step four, any error was harmless because the ALJ also elicited from the VE testimony regarding other jobs Plaintiff could perform, which required no stooping, kneeling, crouching,

---

[4] Indeed, courts have rejected claims based on conflict – even at step five – when a DOT description does not, on its face, conflict with the claimant's RFC if the VE's testimony or the tasks described by the DOT confirm that the job would accommodate the claimant's limitations. See, e.g., Guevara v. Colvin, No. CV 12-01988 AGR, 2013 WL 1294388, at *7-8 (C.D. Cal. Mar. 28, 2013); Huerta v. Astrue, No. EDCV 11-1868-MLG, 2012 WL 2865898, at *2 (C.D. Cal. July 12, 2012); McBride v. Comm'r of Soc. Sec., No. 2:12-CV-0948-CMK, 2014 WL 788685, at *8 (E.D. Cal. Feb. 25, 2014).

or crawling.  (AR 61); see DOT 344.667-010, 1991 WL 672863
(ticket taker (noting that stooping, kneeling, crouching, and
crawling all "not present")); DOT 249.366-010, 1991 WL 672323
(counter clerk (same)); cf. Tommasetti v. Astrue, 533 F.3d 1035,
1042 (9th Cir. 2008) (ALJ's step-four finding that claimant could
return to past relevant work was erroneous because he relied on
VE testimony that deviated from DOT and ALJ did not resolve
inconsistency, but error was harmless given alternative finding
at step five that claimant could perform other work in national
and local economies); Reynolds v. Astrue, 252 F. App'x 161, 165
(9th Cir. 2007) (ALJ's failure to make specific findings
regarding demands of claimant's past relevant work and claimant's
ability to meet those demands was harmless error in light of
ALJ's RFC assessment and step-five determination).

     Plaintiff is not entitled to remand on this ground.

     B.   The ALJ Had No Duty to Further Develop the Record

     Plaintiff contends that the ALJ should have ordered a
consulting examination of her to determine "the nature and
extent" of her mental impairments, "with a particular emphasis on
delving into her physical limitations."  (J. Stip. at 15.)

          1.   Applicable law

     In determining disability, the ALJ "must develop the record
and interpret the medical evidence."  Howard v. Barnhart, 341
F.3d 1006, 1012 (9th Cir. 2003).  Nonetheless, it remains
Plaintiff's burden to produce evidence in support of her
disability claims.  See Mayes v. Massanari, 276 F.3d 453, 459
(9th Cir. 2001).  Moreover, the ALJ's duty to develop the record
is triggered only when there is "ambiguous evidence or when the

11

1   record is inadequate to allow for proper evaluation of the

2   evidence." _Id._ at 459-60.  It is the plaintiff's duty to prove

3   that she is disabled.  _Id._ at 459; _see also_ §§ 404.1512(a)

4   (claimant must prove that she is disabled), 416.912(a) (same);

5   404.1512(c) (claimant must provide medical evidence showing that

6   she is disabled), 416.912(c) (same).

7              2.   Mental impairments

8        The ALJ found that Plaintiff had established a medically

9   determinable impairment of depression but that it did "not cause

10  more than minimal limitation in the claimant's ability to perform

11  basic mental work activities and is therefore nonsevere."  (AR

12  16.)  The ALJ noted that Plaintiff "alleged as a result of her

13  physical impairments she suffered from depression and anxiety,

14  but discussed these issues as if they were in the past, denying

15  any current problems" and "den[ying] taking any psychotropic

16  medications at the time of the hearing."  (_Id._; _see_ AR 55

17  (Plaintiff testifying that she had suffered anxiety and

18  depression "at the time" but no longer did and was taking no

19  medications for those impairments).)  The ALJ further noted that

20  on March 8, 2011, psychiatrist Reynaldo Abejuela, the only

21  mental-health specialist to examine Plaintiff, diagnosed either

22  panic disorder or anxiety disorder with mild depression and

23  opined that Plaintiff had "mild" difficulty in workplace

24  functioning.  (AR 16; _see_ AR 640-41.)  Dr. Abejuela's mental-

25  status examination showed Plaintiff's cognitive functioning to be

26  within normal limits.  (AR 638; _see_ AR 639.)  And although on

27  March 9, 2011, state-agency psychologist Susan Daugherty found

28  some moderate (but predominantly mild) workplace limitations, the

                                  12

ALJ gave her opinion "little weight," noting that it was not
supported by any medical evidence – Plaintiff having received no
mental-health treatment (see AR 637) – and conflicted with
Plaintiff's own testimony (AR 16; see AR 644-45, 658).  The ALJ
thus found that the evidence of record showed no more than mild
difficulties in activities of daily living, social functioning,
and maintaining concentration, persistence, or pace and no
episodes of decompensation.  (AR 16); see 20 C.F.R. pt. 404,
subpt. P, app. 1 § 12.00(C).

    Plaintiff does not dispute the ALJ's finding that the
evidence did not establish a severe mental impairment but instead
contends that the ALJ had a duty to develop evidence of
Plaintiff's mental impairments further.  (See J. Stip. at 15.)
It was Plaintiff's burden, however, to provide evidence that her
mental impairments prevented her from doing her past relevant
work.  See Mayes, 276 F.3d at 459; Drouin, 966 F.2d at 1257.
Plaintiff alleged claustrophobia but not depression or anxiety in
her initial applications for benefits and request for
reconsideration (see AR 210, 227, 235, 278, 281-82; see also AR
270-71), and although she mentioned issues with panic,
claustrophobia, and memory in her Adult Function Report and
appellate submissions to the agency (AR 255-60, 281-82), she
proffered no records showing diagnosis or treatment of mental
impairments.  The agency ordered a mental-status exam, which
confirmed that Plaintiff's mental impairments had only mild
impact on her workplace functioning.  (AR 638-39.)  And she
testified at the hearing that she no longer had problems with
depression and anxiety.  (AR 55; see also AR 43 (at hearing,

13

counsel noting only physical impairments).)   Thus, evidence
before the ALJ established that Plaintiff suffered only mild
mental-health symptoms, and the ALJ therefore had no duty to
develop the record of Plaintiff's mental impairments further.
Mayes, 276 F.3d at 459-60.

### 3.   Physical impairments

Although her argument is not entirely clear, Plaintiff may
also contend that the record was inadequate to permit assessment
of Plaintiff's physical impairments because "no examining
physician opinion exists for the period in question." (J. Stip.
at 15.)

Although Plaintiff submitted only treatment notes, not
opinions, from her treating doctors for the period following her
alleged onset date (see AR 19), Dr. Sharam Jacobs performed an
internal-medicine evaluation of Plaintiff on September 3, 2008,
finding her capable of medium work (AR 339-43), and state-agency
physicians opined initially that Plaintiff was capable of medium
work but upon further development of the record that she had no
severe physical impairments (AR 347, 352 (on Oct. 7, 2008,
recommending medium RFC); AR 406 (on Apr. 6, 2009, affirming
medium RFC); AR 635 (on Jan. 21, 2011, finding Plaintiff's
physical impairments not severe); AR 683 (on June 15, 2011,
affirming finding that physical impairments not severe)).   The
ALJ gave Dr. Jacobs's opinion "some weight" but noted that his
examination "occurred just before the alleged onset date" and
that later medical evidence supported "a more restrictive

14

1   limitation to light work."[5]   (AR 21.)   The ALJ also "placed
2   greater emphasis" on Plaintiff's treatment records than Dr.
3   Jacobs's opinion because the latter was based on only a single
4   examination of Plaintiff.   (Id.)   The ALJ gave "little weight" to
5   the opinions of the state-agency doctors because they did not
6   hear Plaintiff's testimony, portions of which the ALJ gave "the
7   benefit of the doubt" in finding Plaintiff capable of only light
8   work.   (Id.)   It is the ALJ's duty to determine the credibility
9   of medical opinions and resolve conflicts in the medical
10  evidence.   <u>Thomas</u>, 278 F.3d at 956-57; <u>Matney ex rel. Matney v.</u>
11  <u>Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992).   Here, although
12  the doctors who opined as to Plaintiff's level of physical
13  impairment consistently deemed her capable of at least medium
14  work, the ALJ, based on Plaintiff's post-onset-date statements
15  and treatment records, deviated from the medical-opinion evidence
16  in Plaintiff's favor.

17      Plaintiff does not contend that the ALJ erred in assessing
18  the medical-opinion evidence or affording it less than
19  significant weight, but only that she should have ordered a
20  second physical examination of Plaintiff.   (J. Stip. at 14-16.)
21  Although Plaintiff contends that such an examination is mandated
22  (<u>see</u> <u>id.</u> at 14), the Agency has broad discretion in determining
23  whether to purchase a consultative examination, and <u>may</u> do so "to

24

25      [5] The ALJ found and the parties represent that Plaintiff
26  alleged an onset date of October 30, 2008.   (AR 13; J. Stip. at
    2.)   Plaintiff's applications reflect an onset date of October 4,
27  2007 (<u>see</u> AR 191), which may have been amended following a ruling
    on previously filed applications (<u>see</u> AR 65-67, 71-72 (noting
28  2008 filing date); AR 89 (noting October 30, 2008 onset date)).

15

try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination" on a claimant's claim. §§ 404.1519a(b), 416.919a(b); see Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001); Taylor v. Astrue, 386 F. App'x 629, 632-33 (9th Cir. 2010). In this case, the ALJ did not find the evidence insufficient to support a decision; rather, her review of Plaintiff's treatment records, her statements, and the medical-opinion evidence led the ALJ to determine that Plaintiff was capable of light work. (See AR 21); cf. Taylor, 386 F. App'x at 632-33 (finding no error in failure to order second consultative examination when evidence sufficient to support ALJ's determination). That no second consultative examination was ordered does not, therefore, point to a failure to develop the record.

Moreover, the ALJ detailed test results, diagnoses, and treatments in Plaintiff's treatment records, summarizing evidence dating to 2008 of arthritis and joint pain in Plaintiff's hands and back, kidney stones, back spasms, thyroid issues, low-back pain following a car accident, dizziness, sinus disease, cervical disc protrusions, hip pain, and obesity. (See AR 19-20.) The ALJ noted that Plaintiff's treatment records showed that she "received intermittent and inconsistent, but routine, conservative, and non-emergency treatment" for these impairments. (AR 19.) To this summary, Plaintiff objects only that the ALJ "took" "out of context" a visit at which Plaintiff received a hip injection because the ALJ included it in describing Plaintiff's conservative course of treatment but "an invasive injection" "exceed[s] the bounds of conservative treatment." (J. Stip. at

16

16 (citing AR 20, 694).)

It is Plaintiff who ignores the context in which she was treated by hip injection.  Although she complained in November 2011 that she had suffered constant hip pain for two years (AR 695), Plaintiff's first report of hip pain appears to have been in July 2011, when she was advised to continue with prescription pain relief used to ease her arthritis-related back pain (AR 700-01).  Plaintiff's 2011 and 2012 records show regular complaints of left-hip pain, which was exacerbated by activity and improved with rest and pain medication.  (See AR 700-01 (in July 2011, Plaintiff complaining of constant, sharp pain that increased with walking and partially improved with medication, and provider recommending continued prescription pain medication, including prescription-strength naproxen), 698 (in Aug. 2011, provider continuing prescription pain medication and prescription-strength naproxen and recommending calcium and vitamin D), 699 (in Sept. 2011, Plaintiff reporting that pain increased with activity but was helped by prescription pain medication and prescription-strength naproxen), 696-97 (in Oct. 2011, provider noting hip pain among complaints and prescribing continued vitamin D and calcium and ibuprofen), 694-95 (in early Nov. 2011, provider noting that Plaintiff managed hip pain with ibuprofen for two years and that pain increased with range of motion and decreased with no motion and pain medication, and providing injection that gave some pain relief), 693 (in late Nov. 2011, provider not noting any complaint of hip pain and recommending naproxen as needed), 711-12 (in Mar. 2012, treatment notes reflecting complaints including arthritis pain in hip and pain medications

17

limited to ibuprofen and naproxen).)  Thus, although Plaintiff was treated by injection on November 7, 2011, later treatment notes reflect a return to pain medications available over the counter, and there is no other indication in the record that her hip pain was treated by injection.

Although some courts have held that injections do not constitute conservative treatment, those cases involved claimants whose pain was treated (generally ineffectively) with a series of regular injections and more invasive procedures – not a single instance of pain relief through injection.  See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, trigger-point injections, and cervical-fusion surgery not conservative); Christie v. Astrue, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with "steroid injections, trigger point injections, epidural shots, and cervical traction" not conservative); Samaniego v. Astrue, No. EDCV 11-865 JC, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when claimant treated "on a continuing basis" with steroid and anesthetic "trigger point injections," occasional epidural injections, and narcotic medication and doctor recommended "significant invasive surgery"); Huerta v. Astrue, No. EDCV 07-1617-RC, 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009) (treatment by surgery and "a 'series of epidural steroid injections into [claimant's] cervical spine" not conservative).  Plaintiff's single steroid injection over the course of several months, during which Plaintiff's pain was otherwise treated with prescription and

18

over-the-counter medication, does not undermine the ALJ's finding
that Plaintiff's doctors otherwise provided nonurgent,
conservative treatment of Plaintiff's hip pain.  See Walter v.
Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal.
Apr. 6, 2011) (ALJ permissibly discounted plaintiff's credibility
based on "conservative treatment," including medication, physical
therapy, and single injection); Parra, 481 F.3d at 751
("[E]vidence of 'conservative treatment' is sufficient to
discount a claimant's testimony regarding severity of an
impairment.").

       Nor is there any other indication in the record that
Plaintiff's hip pain warranted urgent or aggressive treatment.
Imaging of her left hip was unremarkable.  (See AR 694 (on Nov.
7, 2011, noting normal x-ray); see also AR 484 (unremarkable Mar.
2010 CT scan of pelvis, taken following car accident).)  And
treatment notes do not reflect any doctor's recommendation that
Plaintiff limit her activity because of her hip pain.  The ALJ
thus fairly found that Plaintiff's hip pain was not disabling.
See Parra, 481 F.3d at 751.

       It was Plaintiff's duty to proffer evidence to establish
disabling physical impairments.  When, as here, the ALJ has
rationally found that the treatment records, medical-opinion
evidence, and Plaintiff's statements do not establish a disabling
impairment, the Court must affirm.  See Reddick, 157 F.3d at 720-
21.

       Plaintiff is not entitled to remand on this ground.

**VI.  CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 23, 2015

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[6] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

20